976 F.2d 733
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald F. BALAS, Plaintiff-Appellee,
v.
Kathleen LEISHMAN-DONALDSON, William J. DiGiovanni, and John
A. Becker, Individually and in their official capacities as
Bailiff and Deputy Bailiffs of the Shaker Heights Municipal
Court, Defendants-Appellants,
City of Shaker Heights, Ohio, Defendant.
 No. 91-4073.
 United States Court of Appeals, Sixth Circuit.
 Sept. 9, 1992.
 
 Before KENNEDY and SILER, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Kathleen Leishman-Donaldson, William DiGiovanni, and John Becker, bailiffs of the Shaker Heights Municipal Court, bring this interlocutory appeal from the district court's order denying their motions to dismiss or, in the alternative, for summary judgment. Plaintiff, Ronald F. Balas, initiated this action in state court alleging that defendants had tortiously conducted an unauthorized highly intrusive investigation of him, and violated his rights as protected by the Ohio and federal constitutions. Defendants removed the case and a motion to remand was denied. Defendants' motions for dismissal or summary judgment were premised on the argument that as municipal court bailiffs they were shielded from suit by absolute judicial immunity. The motion was denied.
 
 
 2
 Our jurisdiction is established by 28 U.S.C. § 1291 and Mitchell v. Forsyth, 472 U.S. 511, 525 (1985) ("denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action"). We affirm.
 
 I.
 
 3
 Defendant Leishman-Donaldson is chief bailiff in the court of her husband, Shaker Heights Municipal Court Judge Paul Donaldson. In December 1989, Judge Donaldson conducted a sentencing hearing in the case City of Pepper Pike v. Joel A. Weiner. Weiner had been convicted of driving under the influence of alcohol. Judge Donaldson's sentencing policy regarding first-time offenders such as Weiner was, among other things, to require attendance at Alcoholics Anonymous meetings. At his sentencing hearing, Weiner requested that Judge Donaldson order counselling not with Alcoholics Anonymous but with Balas, with whom Weiner had worked at a charitable organization known as "Kids in Crisis."[1] The record indicates that both Judge Donaldson and Leishman-Donaldson had come into contact with Weiner in the past and, after Weiner testified that Balas had the requisite professional licensing to conduct substance abuse counselling, Judge Donaldson honored Weiner's request.
 
 
 4
 Some weeks after this sentencing hearing, the alleged investigation of Balas was conducted. The parties offer different explanations as to the goals of the investigation and the defendants' motivation. Defendants contend that Chief Bailiff Leishman-Donaldson became aware that Balas was not licensed to conduct substance abuse counselling and that he had been fraudulently representing himself as a licensed psychologist (accepting references to himself as "doctor") at the hearing before Judge Donaldson. Therefore, defendants contend, their investigation of Balas was a properly authorized "sentencing investigation" intended to determine whether a fraud upon the municipal court had been committed. Balas, on the other hand, characterizes the investigation as motivated entirely by personal animus. Balas stated that he had been retained by Judge Donaldson and Leishman-Donaldson to evaluate one of their relatives who was experiencing some substance abuse and/or emotional difficulties. After consulting with the relative's treating psychologist, Balas informed Judge Donaldson and Leishman-Donaldson that it was his belief that the relative was a possible victim of inter-family abuse. Having made this uncomfortable diagnosis implicating a relative in wrongdoing, the investigation of Balas was, in his view, begun in order to embarrass and harass him. Some unflattering details of the investigation were revealed to the press by Judge Donaldson.
 
 
 5
 While conducting the investigation, defendants sought to verify each of the professional affiliations which Balas allegedly had claimed, and conducted personal interviews with individuals whom they believed to be acquainted with Balas. The results of the investigation were turned over to the Shaker Heights prosecuting attorney.
 
 
 6
 Following the investigation, an extraordinary examination of the individuals identified by defendants as associates or acquaintances of Balas was conducted by Judge Donaldson as part of a resentencing hearing for Weiner. Six of these individuals were summoned to appear before Judge Donaldson, and were questioned by the prosecuting attorney. The summonses issued for these individuals were apparently signed by Leishman-Donaldson, although she had no authority to do so. Balas contends that defendants roamed the community with blank summonses, serving all individuals whom they believed to be in any way connected with Balas, and making defamatory statements about him as they went. From the bench, Judge Donaldson converted the "summonses" to subpoenas.[2] The six individuals were questioned by the prosecuting attorney. Subsequent to the resentencing hearing, Judge Donaldson filed a complaint with the Shaker Heights Police Department charging Balas with contempt and obstruction of official business. Balas was not prosecuted.
 
 
 7
 This action began when Balas filed a complaint in the Ohio Court of Common Pleas alleging seven state tort causes of action: (1) invasion of privacy, (2) abuse of process, (3) malicious prosecution, (4) defamation, (5) intentional interference with employment, (6) conspiracy, and (7) emotional distress. In detailing the invasion of privacy count Balas alleged:
 
 
 8
 60. Upon information and belief, plaintiff alleges that Leishman's investigation of plaintiff unlawfully intruded into his private affairs and abridged rights secured to him by the Constitution of the United States and the State of Ohio.
 
 
 9
 61. Upon information and belief, plaintiff alleges that Leishman's investigation was conducted under color of law and was manifestly outside the scope of her employment and official responsibilities.
 
 
 10
 (App. at 29). These allegations were incorporated by reference within the remaining counts of the complaint, and formed the basis of defendants' removal petition. The district court granted the petition, finding that the alleged deprivation of rights secured by the federal constitution under color of state law constituted an alleged violation of 42 U.S.C. § 1983.
 
 
 11
 Following removal of the case, defendants filed their motions for dismissal or, in the alternative, summary judgment, based on the defense of absolute judicial immunity. The district court found that dismissal was inappropriate as plaintiff had articulated facts which, if proven, would preclude the defense of absolute immunity. After reviewing the law on the availability of absolute judicial immunity, the district court found that the defense was based upon a factual determination of the nature of the function being served by defendants in conducting their investigation of plaintiff. Therefore, the court concluded that the issue could not be resolved by summary judgment.
 
 
 12
 Defendants renew their contentions that they were clothed in absolute judicial immunity because (1) in investigating plaintiff they were acting pursuant to court order, and (2) that in conducting a court-ordered sentencing investigation they were acting as an arm of the court and serving a function integral to the judicial process. As a threshold matter, plaintiff contends that the district court lacked subject matter jurisdiction and that this action was improperly removed, and asks for an order of remand. We first address the jurisdiction argument.
 
 II.
 
 13
 In pertinent part, 28 U.S.C. § 1441(b) provides:
 
 
 14
 Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.
 
 
 15
 The general federal question statute, 28 U.S.C. § 1331, provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A cause of action satisfies the "arising under" requirement of the statute only when plaintiff's well-pleaded complaint raises an issue of federal law. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988), cert. dismissed, --- S.Ct. ----, 60 U.S.L.W. 3447, 61 U.S.L.W. 3059 (1992); Striff v. Mason, 849 F.2d 240, 242 (6th Cir.1988). In assessing the existence of a federal question, a court must look to the complaint as it existed at the time the petition for removal was filed. Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277 (6th Cir.1991) (citing Pullman Co. v. Jenkins, 305 U.S. 534 (1939)). In order for jurisdiction to be founded upon a cause of action arising under the Constitution or federal law " 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' " Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S.Cal., 463 U.S. 1, 10-11 (1983) (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936)), see also Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 585 (6th Cir.1990).
 
 
 16
 We find that plaintiff's complaint, as set out in this opinion, contains allegations sufficient to confer subject matter jurisdiction upon the district court. At the time the removal petition was filed, the complaint, on its face, alleged within each state law tort count a claim that Balas' rights as guaranteed by the federal constitution had been violated by defendants while acting under color of authority vested in them by state law. Although the complaint does not specifically reference 42 U.S.C. § 1983, we can discern no other purpose for inclusion of this language than to present a cause of action based upon that statute.
 
 
 17
 Balas correctly points out that for purposes of determining the existence of a federal question the court must recognize that he is the master of his own complaint and that jurisdiction may not be sustained on a theory he has not advanced. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 809 (1986). Yet this rule does not compel a finding of no jurisdiction in this case. We reject plaintiff's contention that the language quoted from his complaint was nothing more than "a legally superfluous reference to [his] constitutional rights." Rather, we find that plaintiff consciously alleged deprivation by a state officer of rights guaranteed him by the federal Constitution. This alleged deprivation is the very heart of this action, notwithstanding that plaintiff casts the effect of that deprivation in terms of state tort remedies. Therefore, we conclude that the district court was vested with subject matter jurisdiction over this action such that removal was properly granted.
 
 III.
 
 18
 We review de novo the district court's determination of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). G.M. Eng'rs and Assoc. v. West Bloomfield Township, 922 F.2d 328, 330 (6th Cir.1990). We apply the same standard of review for defendants' summary judgment motion. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is only appropriate when the non-moving party fails to establish a genuine issue of material fact on an essential element to his case and on which he would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making that determination, we view the evidence in the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We conclude, as did the district court, that the instant case can neither be dismissed under Fed.R.Civ.P. 12(b)(6) nor disposed of by summary judgment under Fed.R.Civ.P. 56(c).
 
 
 19
 The crux of our analysis of either summary procedure is whether defendants, as bailiffs of the municipal court, were entitled to derivatively assume Judge Donaldson's absolute judicial immunity. If defendants are so entitled, then dismissal is the appropriate remedy.
 
 
 20
 Every person acting under color of state law is subjected by section 1983 to liability for the deprivation of any other person's rights, privileges, or immunities secured by the federal Constitution. 42 U.S.C. § 1983. However, section 1983 does not abolish common law immunities. Burns v. Reed, --- U.S. ----, 111 S.Ct. 1934, 1945 (1991) (Scalia, J., concurring) (quoting Malley v. Briggs, 475 U.S. 335, 339-40 (1986)):
 
 
 21
 Our initial inquiry is whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts. If "an official was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions."
 
 
 22
 The question whether immunity will attach in a section 1983 action is entirely one of federal law. Martinez v. California, 444 U.S. 277, 284 (1980).
 
 
 23
 It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. Stump v. Sparkman, 435 U.S. 349, 363 (1978). Whether a judge or some other official is entitled to absolute immunity in a given case turns on a "functional" analysis. Harlow v. Fitzgerald, 457 U.S. 800, 810-11 (1982). The touchstone for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." Burns, 111 S.Ct. at 1946 (Scalia, J., concurring). Absolute judicial immunity has been only "quite sparingly" recognized, id. at 1939 (Opinion of the Court), and the official seeking immunity must show that such immunity is justified for the governmental function at issue. Hafer v. Melo, --- U.S. ----, 112 S.Ct. 358, 363 (1991).
 
 
 24
 Federal officers, other than judges to whom a form of judicial immunity has been found to attach (quasi-judicial immunity), include hearing officers and administrative law judges. Butz v. Economou, 438 U.S. 478, 513 (1978). The Court has also extended the defense to state prosecutors and state parole officers, but taken pains to point out that immunity will only cloak functions performed by such officers which are judicial in nature. Imbler v. Pachtman, 424 U.S. 409 (1976). While the Court found that a prosecutor is entitled to immunity for performance of advocacy functions, the Court left open the question whether such immunity should be afforded to the prosecutor in his role as administrator or investigator. Id. at 430-31. The Court has stated its reluctance to grant absolute immunity to those not "intimately associated with the judicial phase of the criminal process." Id. at 430.
 
 
 25
 Thus, we have held that absolute immunity did not shield a state social worker from section 1983 liability when that individual initiated a child abuse investigation. The decision to open an investigation--notwithstanding the possibility that the investigation could lead to criminal charges--was entirely "investigatory or administrative in nature, not prosecutorial, judicial or otherwise intimately related to the judicial process." Achterhof v. Selvaggio, 886 F.2d 826, 830 (6th Cir.1989).
 
 
 26
 When determining whether someone should be employed or continued as a probation officer or equivalent, or be selected to counsel or supervise a criminal defendant, the judge is not acting in a judicial capacity and the court personnel who perform that function are not acting in a quasi-judicial capacity. Most of the activity complained of in this case falls into this category. Thus, to the extent they were investigating Balas, there is no absolute immunity. However, when a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether Weiner was complying with the terms of his probation, they were performing a quasi-judicial function. To the extent defendants were performing that function at the direction of the judge, they are entitled to quasi-judicial immunity. All of the same considerations that would apply to the judge apply to the probation officer. "The prospect of damage liability under section 1983 would seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing judge's ability to carry out his judicial duties." Demoran v. Witt, 781 F.2d 155, 157 (9th Cir.1986) (finding absolute immunity for probation officers).
 
 
 27
 The trial court was correct in denying the motion to dismiss or for summary judgment based on the record before it, and in holding that further development of the facts would be essential to determining what, if any, parts of the alleged acts were entitled to absolute immunity.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Plaintiff had apparently set up Kids in Crisis as a non-profit center for the counselling of "at risk" youth
 
 
 [2]
 The record indicates that at the time of the resentencing hearing, no affidavit or complaint had been filed against Balas and, therefore, no summonses could have been issued. Ohio Rev.Code § 2935.09. However, the record also reveals that Judge Donaldson had characterized Balas as the "target" of the resentencing hearing. Balas appeared at the resentencing hearing by filing a notice of special appearance and a motion to specify charges