NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0169n.06
Filed: March 1, 2007

No. 05-4135

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES LOGGINS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| FRANKLIN COUNTY, OHIO; FRANKLIN | ) | **O P I N I O N** |
| COUNTY SHERIFF'S DEPARTMENT; | ) | |
| DEPARTMENT OF CORRECTION; MELINDA | ) | |
| BROOKS; FRANKLIN COUNTY, OHIO c/o | ) | |
| COUNTY COMMISSIONERS; ARLENE | ) | |
| SHOEMAKER; DEWEY STOKES; MARY JO | ) | |
| KILROY; JIM KARNES; MIKE BARNES; GARY | ) | |
| ATRIP; MARK J. BARRETT, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    MOORE and MERRITT, Circuit Judges; COLLIER, District Judge.[*]

**CURTIS L. COLLIER, District Judge.**  Plaintiff-Appellant James Loggins ("Loggins")

filed a 42 U.S.C. § 1983 lawsuit against Franklin County, Ohio, the Franklin County, Ohio Sheriff's

Department, the Franklin County, Ohio Department of Correction, the Franklin County, Ohio Board

of Commissioners, a number of Franklin County officials, the City Council of Columbus and certain

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District
of Tennessee, sitting by designation.

of its officials, as well as the Ohio State University Medical Center, the Ohio State University Board

of Trustees, and two officials of those bodies. The United States District Court for the Southern

District of Ohio disposed of the case by granting summary judgment with respect to certain

defendants, granting a motion to dismiss with respect to certain other defendants, and dismissing the

remaining defendants. From these rulings Appellant brings this appeal. Because we agree the

district court correctly decided these issues, we **AFFIRM** the district court's judgment.

## I. FACTS

On May 9, 2000, Loggins was convicted of public indecency in the Franklin County, Ohio,

Municipal Court. Loggins was placed on probation for two years by Judge Mark Froehlich of that

court. As a condition of probation, Loggins was ordered not to engage in any offensive conduct or

commit any similar acts. Defendant-Appellee Melinda Brooks ("Brooks") was assigned as Loggins'

probation officer. In August 2001, Brooks received a call from Larry Mangus, Dean of Student

Affairs for Shawnee State University (the "University"), alerting Brooks that Loggins was suspended

from the University for violating the University Student Code against lewd conduct.

Using this information, Brooks filed a Statement of Violations informing Judge Froehlich

of the new allegations. The Statement of Violations outlined the allegations and recommended

Loggins' probation be revoked if he was found to have violated the conditions of his probation.

Judge Froehlich issued an arrest warrant and Loggins was arrested. On September 11, 2001,

Loggins, while being represented by counsel, stipulated probable cause existed for the violation of

his probation and continued with the mitigation portion of the revocation hearing. Judge Froehlich

terminated Loggins' probation for the time he served in jail awaiting his hearing and because of medical problems associated with injuries he received during a jail altercation.

While in custody for the probation violation, Loggins was housed at the Franklin County Corrections Center II ("FCCCII"). On September 8, 2001, Loggins was in an altercation with inmate Marquis Russell ("Russell"). The altercation consisted of both individuals exchanging words and each throwing one punch. Russell's blow connected resulting in multiple fractures to Loggins' lower jaw. Loggins signed a statement indicating he did not wish to pursue internal jail rules violations against Russell prior to being taken to the Ohio State University Medical Center (the "Hospital") for treatment. Loggins' deposition testimony indicates the statement was given freely without any indication Loggins opposed completing the statement before being taken to the Hospital. The delay in leaving for the Hospital was thirty to forty-five minutes. Loggins' injuries required surgery and his jaw was wired shut on September 10, 2001. Loggins was released from the Hospital and returned to FCCCII on September 11, 2001.

Loggins in his deposition states that after his return to FCCCII, he was not provided with his liquids only diet, was refused medical attention and was denied access to his prescribed medications and supplies. Loggins was incarcerated for less than twenty-four hours after returning from the Hospital. Loggins arrived at FCCCII from the Hospital at 4:10 p.m. September 11, 2001 and was released from FCCCII at 1:01 p.m. September 12, 2001. After returning from the Hospital, Loggins was placed in a holding cell to be processed prior to being placed in a medical cell. A doctor at FCCCII received the discharge paperwork from the Hospital and created medical orders for jail personnel at 10:45 p.m. September 11, 2001. The orders show the facility doctor ordered Loggins

to receive antibiotics, pain medication and a liquid diet. At approximately 10:00 p.m. on September 11, 2001, Loggins filled out a medical request form that was transmitted to the medical department by jail guards. The medical request form was processed after Loggins was released the following day. The medical care at the jail was subcontracted out to the Ohio State University Hospitals.

## II. COUNTY DEFENDANTS' SUMMARY JUDGMENT

### A. Loggins' claims against County Defendants

Loggins alleged Defendants-Appellees Arlene Shoemaker, Dewey Stokes, Mary Jo Kilroy, Mark Barrett and Sheriff Jim Karnes (collectively "County Defendants") violated his civil rights by failing to segregate and protect him, failing to provide sufficient medical care and failing to train and supervise the jail employees. The district court granted summary judgment in favor of these defendants.

### B. Standard of review

The Court reviews *de novo* a district court's order granting summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## C.    Federal claims against Mark Barrett in his individual capacity

Mark Barrett ("Barrett") was named in Loggins' third amended complaint "in his official capacity as Chief Deputy, Corrections Division with the Franklin County Sheriff's Department." Loggins alleged Barrett was acting in this capacity "at all times relevant to this Complaint." Despite this language, the district court construed the language in the complaint as sufficient to put Barrett

on notice in his individual capacity. Loggins' federal claims against Barrett arise under 42 U.S.C. § 1983. To prevail Loggins must prove Barrett "caused a deprivation of Plaintiff's federal constitutional rights," *Hafer v. Milo*, 502 U.S. 21, 25 (1991), or that he "encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995).

Loggins alleges Barrett failed to act on his behalf by failing to properly train personnel and by failing to segregate Loggins from Russell. "[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) (citation omitted). "Liability under this theory must be based on more than a mere right to control employees and cannot be based upon simple negligence." *Id*. at 206-07. Barrett was not present at FCCCII the day the altercation occurred and Loggins does not argue Barrett took any action toward him. As there is no dispute of material fact that Barrett did not commit active unconstitutional behavior, the district court did not err in granting summary judgment to Barrett in his individual capacity with regard to Loggins' federal claim.

**D.      Federal claims against Sheriff Karnes and Barrett in their official capacities**

Loggins alleges Sheriff Jim Karnes ("Karnes") and Barrett violated his rights when they failed to segregate and protect him, failed to provide sufficient medical care and failed to train and supervise their employees. To prevail on this section 1983 claim, Loggins must demonstrate a "violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *W. v. Atkins*,

487 U.S. 42, 48 (1988). "State employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state." *Id*. at 49-50 (citations omitted). Moreover, because a suit against a government official in his official capacity is treated as a suit against the government entity, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), Karnes and Barrett are liable in their official capacities only if an official policy or custom caused a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). We will address these allegations individually.

  *1.  Failure to segregate*

  To prove a claim for failure to segregate and protect "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety.'" *Id*. at 844 (citation omitted). There is no evidence Karnes or Barrett had any knowledge of a substantial risk of serious harm to Loggins. Russell was incarcerated for a misdemeanor traffic violation. Russell had not exhibited a history of violence in a prior incarceration and the guards quickly responded to this 30 second altercation. There was no prior history between Loggins and Russell and there is no evidence any jail personnel had knowledge of any reason the two should be separated. Although Russell's criminal history included felonies, there was no indication from his previous incarcerations or his specific criminal history that he had a propensity towards violence. There is no evidence Karnes or Barrett had any knowledge of a substantial risk of serious harm, and therefore Loggins' claim for failure to segregate

fails.

2.  *Failure to provide medical care*

Loggins' claim for failure to provide sufficient medical care fails for similar reasons.  The government has an obligation to provide medical care for individuals it incarcerates and a "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted).  Without a showing of deliberate indifference, claims of negligence or malpractice cannot sustain an Eighth Amendment claim.  *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006).

A claim for deliberate indifference has both a subjective and an objective component.  *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  To satisfy the objective component the plaintiff must allege a "sufficiently serious" medical need.  *Id.* at 703 (citation omitted).  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Id*. (citation omitted).  If an official should have perceived a significant risk but did not, there is no Eighth Amendment claim.  *Id.*  "The subjective component requires that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying the medical care.'"  *Perez*, 466 F.3d at 424 (citation omitted).  The plaintiff must show more than medical malpractice and negligence

because the subjective requirement acts to prevent the constitutionalization of medical malpractice claims. *Comstock*, 273 F.3d at 703.

Liability only attaches when the plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994)(citation omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). Loggins' claims relate to treatment received immediately after the altercation and after he returned to the jail from the Hospital. We will address each in turn.

### a.    Treatment before hospital admission

Loggins claims he was forced to waive his right to press charges against Russell before he was taken to the Hospital.[1] However, Loggins stated in his deposition that the jail statement was given freely and voluntarily before he went to the Hospital. Even if Loggins was detained prior to being taken to the Hospital, his claim fails because he suffered no harm.

A claim for failure to provide medical care for the time lapse between the incident and being taken to the hospital is not supported. Loggins fails to establish the objective component of the

---

[1]The form Loggins signed was a "Division of Corrections Statement of Witness" form. The only right Loggins waived was his Miranda rights regarding any criminal conduct he discussed in the statement. The statement written by Loggins merely states "I am not pressing charges at this time." Loggins stated in his deposition the only charges he was choosing not to press were internal jail violations. Moreover, Loggins went to the City Prosecutor after he was released from jail and filed a criminal complaint against Russell.

deliberate indifference test because he cannot show the alleged deprivation is sufficiently serious. This Court examines the seriousness of the deprivation by looking at the effects of the delay in treatment. *See Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(indicating "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed" (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994))). The evidence shows the thirty to forty-five minute delay before Loggins was taken to the Hospital had no detrimental effect on Loggins' health. Loggins' treating physician stated the treatment and outcome would have been the same if the injury would have occurred at the Hospital. Therefore, because Loggins cannot establish an essential element for his claim, summary judgment on Loggins' claim for the events prior to his hospitalization was proper.

### b. Treatment after hospital discharge

Loggins states he did not receive his prescribed medications, proper medical care or a liquid diet upon his return to the jail. Loggins establishes the objective component of the deliberate indifference test because the deprivation of prescriptions was a sufficiently serious medical need. Loggins has produced some evidence tending to demonstrate the detrimental effect of the delay in treatment as his treating physician stated missing two doses of antibiotics would be detrimental to recovery. The prescribed plan of treatment was interrupted when Loggins was denied his medicine.

Loggins cannot establish the subjective component of the deliberate indifference test because he cannot show Karnes or Barrett subjectively perceived a risk of harm and then disregarded it. The burden to prove subjective knowledge is "onerous." *Comstock*, 273 F.3d at 703. "The state of mind

requires that the official 'consciously disregard' a substantial risk of serious harm. Thus, a showing of deliberate indifference requires a showing of the official's actual awareness of a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The "inflicting official [must] act or fail to act with subjective awareness of the deprivation." *Id*. at 129.

There is no evidence Karnes or Barrett had any knowledge of Loggins' medical care while he was incarcerated. Loggins was at FCCCII for less than twenty-four hours after returning from the surgery, during which he was processed into the jail and later processed for release. The medical request form he completed was not received and processed until after Loggins was released. There is no evidence to suggest Karnes or Barrett had any knowledge of Loggins' medical treatment and therefore Loggins' claim fails because Karnes and Barrett lacked actual awareness of a substantial risk of serious harm to Loggins.

*3. Failure to train and supervise*

When a plaintiff alleges supervisory liability based on failure to train and supervise employees, the plaintiff must show the failure to train and supervise amounts to deliberate indifference on the part of the supervisor. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In *City of Canton* the United States Supreme Court stated:

> The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.
>
> . . . .

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 388-90.

Loggins has not put forth any evidence suggesting Karnes or Barrett encouraged or directly participated in any alleged deliberate indifference to Loggins' medical needs. Moreover, Loggins has not identified a specific written policy or memorialized custom indicating officers are to ignore the medical needs of jailed inmates. Loggins has not produced an official declaration that such a policy or custom exists. Loggins argued that similar allegations raised in other pending cases demonstrated a custom of deliberate indifference, but the mere fact that allegations have been raised, without any effort to prove those allegations, is insufficient to establish a custom. *See Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005) (stating that for a custom to give rise to liability, it must be "so permanent and well-settled as to constitute a custom or usage with the force of law" (internal quotation marks omitted)). Karnes and Barrett put forth evidence that indicates the training jail personnel received relating to inmate supervision, inmate protection and procedures for handling medical situations. The evidence shows there is a policy to provide adequate medical care to inmates. Furthermore, Loggins himself acknowledges jail deputies did pass along his request for medical attention evidencing a policy of ensuring inmates received proper medical attention. As there is no evidence Karnes or Barrett encouraged, implicitly authorized or knowingly acquiesced in the unconstitutional conduct of any officers, his claim for failure to train and supervise fails.

**E.     Federal claims against Franklin County Board of Commissioners members Arlene Shoemaker, Dewey Stokes, and Mary Jo Kilroy (the "Board")**

The district court correctly characterized Loggins' claims against the Board as a four-pronged 42 U.S.C. § 1983 claim. Loggins claims the Board: (1) promulgated a policy of improper medical care; (2) promulgated a policy of denying inmates their constitutional rights; (3) failed to train, supervise and direct the other defendants; and (4) failed to take action to remedy flawed systemic practices resulting in false imprisonment. Loggins' claims fail because as discussed above there is no constitutional injury. Assuming a constitutional injury did occur, there is no evidence the Board promulgated any policies leading to Loggins' injuries.

The Board possesses a limited set of powers and duties dictated by statute. OHIO REV. CODE ANN. §§ 305, 307. By statute, the Sheriff is responsible for the day-to-day operations of the jail and as part of that responsibility the Sheriff promulgates rules for the jail. OHIO REV. CODE ANN. § 341.01. The Board is responsible for providing a jail that meets the minimum design standards of the Ohio Code. OHIO REV. CODE ANN. § 307.01. There is no evidence the Board made any policies that would support Loggins' first three claims. Loggins puts forth no evidence the Board enacted or even had the authority to enact such policies. Therefore, summary judgment is appropriate on the first three theories.

Loggins also asserts the Board failed to prevent or remedy systematic injustices resulting in false imprisonment. As discussed above, absent a statutory grant of power, the Board is without power to act. There is no support in the record or in the Ohio Code to suggest the Board had any responsibility for the issuance of the warrant that led to Loggins' arrest. The Board's role in the

judicial system is limited to a duty to provide a courthouse. OHIO REV. CODE ANN. § 307.01.

Loggins simply asserts because certain actions occurred, the Board must be responsible for them.

As unsupported claims will not prevent summary judgment, the district court did not err in granting

summary judgment to the Board.

**F.      State law claims against Karnes and Barrett**

The district court correctly granted summary judgment for Karnes and Barrett with respect

to the state law claims against them.[2]  The district court determined Karnes and Barrett enjoyed

immunity under state law for these claims. OHIO REV. CODE ANN. § 2744.03(A)(6) controls the

issue of state immunity in this case.  Under this section, immunity is provided for employees in

Barrett's position with the following exceptions:

> (a) The employee's acts or omissions were manifestly outside the scope of the
> employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or
> in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised
> Code. Civil liability shall not be construed to exist under another section of the
> Revised Code merely because that section imposes a responsibility or mandatory duty
> upon an employee, because that section provides for a criminal penalty, because of
> a general authorization in that section that an employee may sue and be sued, or
> because the section uses the term "shall" in a provision pertaining to an employee.

OHIO REV. CODE ANN. § 2744.03(A)(6)(a)-(c).  As the district court pointed out, Loggins does not

---

[2]The district court did not address any state law claims against Karnes because Loggins did not address claims against Karnes in his memorandum in opposition to summary judgment. Loggins did not raise this issue before this Court and therefore the Court will only address claims as they relate to Barrett.

-14-

argue any of the statutory exceptions apply. Instead he asserts the statute cannot provide immunity for a violation of federal law or the United States Constitution. While the statute cannot shield Barrett from section 1983 claims, it does provide immunity from state law claims. Therefore, because the acts were within the scope of employment, there is no evidence he acted with a malicious purpose, in bad faith or in a wanton and reckless manner, and there is no other state statute that expressly imposes liability on Barrett, summary judgment on the state law claims is appropriate.

### III. BROOKS' MOTION TO DISMISS

The district court granted Defendant-Appellee Melinda Brooks' ("Brooks") motion to dismiss after determining she was entitled to quasi-judicial immunity. Loggins appeals this dismissal.[3]

We review *de novo* the district court's grant of Brooks' motion to dismiss under FED. R. CIV. P. 12(b)(6). *G.M. Eng'rs and Assocs. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). The crux of the analysis is whether Brooks was entitled to immunity. If so, the district court was correct in dismissing Brooks from this action. Loggins argues Brooks falsely advised Judge Froehlich that an arrest warrant for Loggins arising from the University incident had been issued when it was actually forthcoming. In the district court and in his briefs to this Court, Loggins

---

[3]The district court dismissed Loggins' claims against Brooks in both her individual and official capacities. On appeal, Loggins argues only that Brooks was not entitled to quasi-judicial immunity. Accordingly, we do not address any other issues related to Brooks' potential liability in her individual or official capacity.

apparently fails to understand that where immunity applies, his claim is completely barred.

Therefore, the preliminary question is whether the district court's immunity determination was

appropriate.

The question of whether immunity will attach in a 42 U.S.C. § 1983 action is a question of

federal law. *Martinez v. California*, 444 U.S. 277, 284 (1990). A panel of the Sixth Circuit

previously decided the issue with respect to probation officers. *Balas v. Leishman-Donaldson*, No.

91-4073, 1992 WL 217735 (6th Cir. Sept. 9, 1992). The panel found a probation officer performing

duties to ensure a probationer was complying with the terms of probation was entitled to quasi-

judicial immunity. *Id*. at *5. *See also Timson v. Wright*, 532 F.2d 552 (6th Cir. 1976) (holding

quasi-judicial immunity shields chief probation officer from liability). The panel explained:

> Federal officers, other than judges to whom a form of judicial immunity has been found to attach (quasi-judicial immunity), include hearing officers and administrative law judges. *Butz v. Economou*, 438 U.S. 478, 513 (1978). The Court has also extended the defense to state prosecutors and state parole officers, but taken pains to point out that immunity will only cloak functions performed by such officers which are judicial in nature. *Imbler v. Pachtman*, 424 U.S. 409 (1976) . . . .
>
> . . . .
>
> . . . [W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [a defendant] was complying with the terms of his probation, they were performing a quasi-judicial function. To the extent [probation officers] were performing that function at the direction of the judge, they are entitled to quasi-judicial immunity. All of the same considerations that would apply to the judge apply to the probation officer. "The prospect of damage liability under section 1983 would seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing judge's ability to carry out his judicial duties." *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir.1986) (finding absolute immunity for probation officers).

*Balas,* 1992 WL 217735 at \*5. The Court agrees with the reasoning of the *Balas* opinion.

Accepting all of Loggins' allegations against Brooks as true, he fails to state a claim upon which relief can be granted because Brooks is entitled to immunity. All of Brooks' actions were related to ensuring Loggins was complying with the terms of his probation. At all relevant times Brooks was working for Judge Froehlich in the context of a judicial proceeding, unlike, for example, an independent complaining witness or investigating officer. *See Kalina v. Fletcher*, 522 U.S. 118, 126-28 (1997). All statements made by Brooks were during the judicial decision making process considering whether to revoke Loggins' probation. All adverse actions Loggins complains of were done by Judge Froehlich aided by the recommendation of Brooks. As all of Brooks' actions were intimately associated with judicial proceedings, the district court did not err in granting Brooks' motion to dismiss.

## IV. CITY DEFENDANTS' DISMISSAL

Loggins also claims the district court committed error in dismissing his claims against Defendants-Appellees the City of Columbus, the City of Columbus Mayor and the Columbus City Council Members (collectively the "City Defendants"). Loggins alleges the City Defendants conspired with Brooks to deprive him of his constitutional rights. The district court dismissed the City Defendants as a misjoined party pursuant to FED. R. CIV. P. 21.

Having examined this claim we conclude the district court did not err in dismissing the City Defendants under FED. R. CIV. P. 21. This Court reviews a district court's decision to dismiss a misjoined party under FED. R. CIV. P. 21 for abuse of discretion. *Letherer v. Alger Group, L.L.C.*,

328 F.3d 262, 266 (6th Cir. 2003). We must affirm the dismissal "unless the court is left with a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 266-67 (quoting *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998)).

Loggins filed his original complaint in August 2001 in the Common Pleas Court of Franklin County, Ohio. The suit was removed to federal court. Next, Loggins filed an amended complaint on December 23, 2002. Neither of the first two complaints named any of the City Defendants as defendants. On February 25, 2003, Loggins filed a motion with the district court seeking leave to file a second amended complaint. Loggins attached his proposed second amended complaint to his motion requesting leave. The attached document did not include any mention of adding the City Defendants. In April 2003 the district court denied the motion to amend on unrelated grounds, reasoning that because Loggins had named Franklin County, Ohio, as a party, he did not need to name the Commissioners or the Sheriff. However, in February 2004 the district court granted the motion to amend on the condition that Loggins would only name proper parties and specifically listed Brooks as an improper party who was not to be named in the new complaint.

Loggins filed his second amended complaint on February 23, 2004, and for the first time named the City Defendants as defendants. This was two and a half years after the original complaint was filed. Loggins named the City Defendants in the second amended complaint even though he did not include the City Defendants in the attachment to his motion seeking leave to file the new complaint. The district court then dismissed the City Defendants pursuant to FED. R. CIV. P. 21 because it found Loggins was attempting to improperly resurrect claims against Brooks after they had already been decided. The district court made it clear in the order dismissing Brooks from the

-18-

case that any claims against the City Defendants were indirectly dismissed from the case when the claims against Brooks were resolved.

Loggins then argued to the district court that he worried if he did not name Brooks in the second amended complaint he would effectively waive his right to appeal the earlier dismissal. To ensure the claims against Brooks would be preserved on appeal, on April 22, 2004, the district court granted leave to file the third amended complaint and stated it would wipe the slate clean with regard to the second amended complaint. However, Loggins failed to name the City Defendants in the third amended complaint. The district court then dismissed all claims against Brooks finding she was properly dismissed previously. Ultimately, Loggins only named the City Defendants in the second amended complaint, the third of four complaints filed in this case.

Loggins argues when the district court wiped the slate clean, he should have been able to reassert his claim against Brooks and the City Defendants. Loggins, however, failed to rename the City Defendants in the third amended complaint despite renaming Brooks. Therefore, if the district court did mean to truly wipe the slate clean, Loggins abandoned his claims against the City Defendants by not naming them. The district court allowed Loggins to rename Brooks in the third amended complaint for the simple point of preserving the right to appeal with the understanding she would be dismissed from the case immediately. The district court noted Loggins did not assert any claims against the City Defendants other than through the actions of Brooks who had already been dismissed from the case. The district court interpreted Loggins' naming the City Defendants in the second amended complaint as an attempt to resurrect the issue as to Brooks which had already been decided. It is telling that Loggins only named the City Defendants in the one complaint where the

district court explicitly instructed him he could not name Brooks. The dismissal of Brooks resolved the claims against the City Defendants. The district court did not abuse its discretion when it granted the City Defendants' motion to dismiss as there is no evidence the trial court committed a clear error of judgment.

## V.  ADDITIONAL CLAIMS

Loggins also appeals additional rulings. We have carefully considered all of appellant's other claims of error. We find all of them to be without merit and do not warrant extended discussion. We shall mention them briefly, and explain why they lack merit.

### A.  Ohio State University Medical Center's dismissal

The district court dismissed Loggins' claims against the Ohio State University Medical Center ("Ohio State") for lack of jurisdiction. Loggins failed to raise the issue in his initial brief to this Court but did address the dismissal in his reply brief. This Court granted Ohio State's motion to strike Loggins' reply brief as it related to Ohio State. The Court also denied Loggins' motion to consider the reply brief as a supplemental brief. As such, this Court did not review Ohio State's dismissal.

### B.  Motions to strike

Loggins appealed four of the district court's decisions pertaining to motions to strike. First, Loggins argues the district court erred when it granted the County Defendants' motion to strike Loggins' affidavits and exhibits. The district court refused to consider documents filed well beyond the filing deadline set out in the local rules. Because the filings were untimely without any justification, the district court did not abuse its discretion in deciding not to consider Loggins'

exhibits and affidavits.

Second, Loggins argues the district court did not have the power to strike his expert designation. The district court excluded the expert designation under FED. R. CIV. P. 37(c)(1), finding Loggins did not make a timely or adequate expert disclosure. This Court reviews the exclusion under Rule 37(c)(1) for abuse of discretion. The district court was well within its authority to strike Loggins' expert designation because it was six months late and did not conform to the Federal Rules of Civil Procedure. As such, we do not find the district court abused its discretion.

Third, Loggins argues the district court erred by not granting his motion to strike portions of the court record dealing with his public indecency charge. The district court noted FED. R. CIV. P. 12(f) was not designed to remedy this type of situation. The district court did not abuse its discretion when it denied Loggins' motion to strike scandalous material because Loggins' public indecency charge became an issue when Loggins filed his complaint.

Lastly, the district court did not err in striking the City Defendants from the docket because they were not proper parties to the lawsuit. As discussed above, Loggins did not properly name the City Defendants and all claims against the City Defendants were resolved when Brooks was dismissed from the lawsuit. Therefore, the district court did not err in ordering all reference to the City Defendants be removed from the docket.

## C.     Loggins' motion for additional discovery

Loggins argues the district court abused its discretion when it dismissed his motion for additional discovery pursuant to FED. R. CIV. P. 56(f). Loggins filed a motion for additional discovery after the County Defendants filed a motion for summary judgment. After the summary

judgment motion was filed, the district court allowed Loggins to amend his complaint. The district

court then allowed the County Defendants to withdraw their motion for summary judgment. As a

result, discovery opened again for all parties. The district court did not abuse its discretion when it

denied Loggins' motion for additional discovery under Rule 56(f) as moot because Loggins was able

to conduct discovery after the County Defendants' motion for summary judgment was withdrawn.

## VI. CONCLUSION

Because the district court correctly decided the issues before it, we **AFFIRM** the district

court's judgment.