NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1166n.06

No. 11-5383

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 09, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANTHONY DRAINE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| VERONICA LEAVY; AUGUSTINE | ) | THE WESTERN DISTRICT OF |
| CURRIE, Individually and as Employees of | ) | TENNESSEE |
| the Tennessee Board of Probation and Parole, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MOORE, COOK, and WHITE, Circuit Judges.

PER CURIAM. Anthony Draine, a Tennessee citizen proceeding with counsel, appeals a district court order dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. The parties have waived oral argument.

Draine was paroled on August 23, 2007, after serving a twenty-year prison sentence for attempted first-degree murder. His parole was set to expire on April 22, 2010. On September 30, 2009, Draine met with the Tennessee Board of Parole and Probation (Board) regarding a traffic ticket that he reported to the Board. Soon after this meeting, the Board ran a routine records check to see if any supervised parolees had been arrested. This routine check was unrelated to Draine's meeting before the Board. As a result of the records check, Board Supervisor Veronica Leavy discovered that an individual named Anthony Draine had been charged with sexual battery, resisting official detention, and gambling. In fact, this individual was not the plaintiff Draine, but another individual. Leavy directed Draine's parole officer, Augustine Currie, to issue a parole violation report for the

charges.  On October 2, 2009, the Board issued a parole violation report and a parole warrant, causing Draine to be arrested and incarcerated in the Shelby County Jail.  Draine was then sent to Tennessee Department of Corrections.  Although Draine requested a preliminary hearing, the other Anthony Draine waived his right to a hearing and thus Draine never received one.  Consequently, Draine was incarcerated for nearly thirty days before the Board withdrew the warrant and the prison released him.

On May 18, 2010, Draine filed suit under § 1983 against defendants Leavy and Currie, alleging that they violated his Fourth Amendment right to be free from unreasonable searches and seizures, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment procedural due process rights.  The defendants moved to dismiss Draine's claims based on absolute quasi-judicial immunity.  On March 1, 2011, the district court granted the defendants' motion, finding that their actions "occurred in the course of evaluating whether Plaintiff had violated the terms of his parole" and they were therefore "absolutely immune from suit under the doctrine of quasi-judicial immunity."

This court reviews de novo "a district court's grant of a motion to dismiss." *Gunasekera v. Irwin*, 551 F.3d 461, 465-66 (6th Cir. 2009); *see Lawrence v. Welch*, 531 F.3d 364, 372 (6th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Reviewing the district court's decision on a motion to dismiss, we construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

Whether a defendant is entitled to immunity from a § 1983 action is a question of federal law. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).  Judges are immune "from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54

(1967). "[T]he absolute immunity that protects judicial officers engaged in judicial functions also protects other state officials engaged in adjudicative functions." *Dean v. Byerley*, 354 F.3d 540, 555 (6th Cir. 2004); *see Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). Quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).

However, we recognize that "the Supreme Court has been 'quite sparing' in their recognition of the doctrine of absolute immunity, and has refused to extend it any 'further than its justification would warrant.'" *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997) (internal citations omitted). As a result, quasi-judicial immunity does not apply to functions performed by state parole officers that are not judicial in nature. *See, e.g., Balas v. Leishman-Donaldson*, 976 F.2d 733, at *4 (6th Cir. 1992)(Table). "Whether an action is judicial depends on the nature and function of the act, not the act itself." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) (internal citations omitted).

The question here is whether Leavy's act of ordering Currie to prepare a Parole Violation Report and Currie's preparation of that Report for submission to the Board are judicial acts in nature and function. The district court concluded that they were based on a finding that the defendants' actions "occurred in the course of evaluating whether Plaintiff had violated the terms of his parole." The dissent similarly states that defendants' acts involve "the investigation of Draine's parole compliance." However, there was, in fact, no evaluation nor any decision-making acts performed by defendants here. At the time the routine check was run, neither defendant was investigating Draine's parole compliance. Defendants simply saw a name on a public records sheet that matched the name of a parolee, and, without performing any evaluation, submitted a request for a parole warrant to the Board. This general, routine, investigative act is neither an adjudicative task

nor a task "so integral or intertwined with the judicial process such that quasi-judicial immunity applies.

At least three of our sister circuits have deemed such acts non-judicial. *See Swift v. California*, 384 F.3d 1184 (9th Cir. 2004) (holding that absolute immunity did not apply to parole agents investigating parole violations and recommending initiation of parole revocation proceedings); *Ray v. Pickett*, 734 F.2d 370, 374 (8th Cir. 1984) ("we do not find that the function of a probation officer in submitting a parole violation report is either adjudicatory or prosecutorial in nature."); *Galvan v. Garmon*, 710 F.2d 214 (5th Cir. 1983) (per curiam) (holding that qualified, rather than absolute, immunity applied to state probation officer who mistakenly caused the arrest and incarceration of a person on probation). Although "parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers," *Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir. 1990), as are "those who make recommendations concerning parole," *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005), a parole officer's recommendation that the Board issue a parole warrant is an investigative function akin to a police officer requesting an arrest warrant. In that situation, only qualified immunity applies. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (rejecting police officer's argument that absolute immunity applies when seeking an arrest warrant instead of qualified immunity); *see also Gray v. Poole*, 275 F.3d 1113 (D.C. Cir. 2002) (finding social worker's recommendation that county initiate a neglect action entitled to qualified immunity).

Accordingly, we reverse the district court's dismissal on the basis of absolute immunity and remand for further proceedings consistent with this opinion.

COOK, Circuit Judge, dissenting. No fewer than three unpublished decisions in this Circuit have applied quasi-judicial immunity to the official actions of parole and probation officials in ensuring that probationers comply with the terms of their release. *E.g.*, *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 476 (6th Cir. 2007) (probation officer's advice to sentencing court); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (per curiam) (finding that absolute immunity applies to parole board members, as well as "those who make recommendations concerning parole" in relation to parole hearings); *Balas v. Leishman-Donaldson*, 976 F.2d 733, No. 91-4073, 1992 WL 217735, at *5 (6th Cir. Sept. 9, 1992) (table) (same, court personnel investigating compliance with probation). We likewise shield probation officers' policymaking authority with quasi-judicial immunity, to the extent that such policies enable the officials to monitor probationers' compliance with the terms of probation. *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (per curiam) (affirming application of quasi-judicial immunity to claims against chief probation officer alleging discriminatory probation-reporting requirements). Despite this steady stream, today's majority charts a new course that separates parole officers' investigative and process-oriented functions from the list of quasi-judicial activities.

In doing so, the majority offers conflicting instructions. On the one hand, it labels as non-judicial "Leavy's act of ordering Currie to prepare a Parole Violation Report and Currie's preparation of the Report for submission to the Board," despite the fact that these acts constitute the officers' decisionmaking process and ultimate *advice* to the parole board. Later, however, the majority acknowledges *Horton*'s absolute immunity for parole recommendations and targets the officers' "recommendation that the Board issue a parole warrant"—an act inextricably linked to the board's ability to enforce parolee's compliance with the terms of release. In reaching these conclusions, the majority relies entirely on cases from other courts.

Though unpublished, I would adhere to the reasoning adopted in our prior decisions. Employing the functional approach espoused by the majority, this case presents a discreet

parole-enforcement action begun after a records search that took place within two days of Draine's traffic-ticket-related parole meeting. The challenged conduct concerns an investigation of parole compliance and the preparation of both a parole violation report and a parole warrant. Tennessee law views these steps as falling under parole officers' core functions of monitoring compliance with parole terms and recommending the appropriate punishment for violations. *Compare* Tenn. Code Ann. §§ 40-28-111(a), 40-28-120 (2011) (vesting parole officers with authority "to supervise, investigate and check on the conduct, behavior and progress of parolees" and to prepare violation reports upon reasonable cause, while authorizing the director of parole to issue parole warrants), *with* Tenn. St. §§ 40-28-605, 40-28-607 (West 2012) (same). As we explained in *Balas*, such functions are judicial in nature. *Balas*, 1992 WL 217735, at *5 ("[W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [the probationer] was complying with the terms of his probation, they were performing a quasi-judicial function."); *accord Loggins*, 218 F. App'x at 476. *See also Cleavinger v. Saxner*, 474 U.S. 193, 204 (describing parole board members "as an arm of the sentencing judge" (citation and internal quotation marks omitted)).

The fact that parole officers make mistakes to the detriment of a parolee does not justify revoking quasi-judicial immunity. "The prospect of damage liability under section 1983 would seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing [authority's] ability to carry out [its] judicial duties." *Balas*, 1992 WL 217735, at *5 (quoting *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir.1986)).

Today's decision will confuse district courts about the reach of quasi-judicial immunity while exposing sentencing officials to liability for their acts in the service of judicial proceedings. I respectfully dissent.