COOK, Circuit Judge,
dissenting.
No fewer than three unpublished decisions in this Circuit have applied quasi-judicial immunity to the official actions of parole and probation officials in ensuring that probationers comply with the terms of their release. E.g., Loggins v. Franklin Cnty., Ohio, 218 Fed.Appx. 466, 476 (6th Cir.2007) (probation officer’s advice to sentencing court); Horton v. Martin, 137 Fed.Appx. 773, 775 (6th Cir.2005) (per curiam) (finding that absolute immunity applies to parole board members, as well as “those who make recommendations concerning parole” in relation to parole hearings); Balas v. Leishman-Donaldson, 976 F.2d 733, No. 91-4073, 1992 WL 217735, at *5 (6th Cir. Sept. 9, 1992) (table) (same, court personnel investigating compliance with probation). We likewise shield probation officers’ policymaking authority with quasi-judicial immunity, to the extent that such policies enable the officials to monitor probationers’ compli- *497 anee with the terms of probation. Timson v. Wright, 532 F.2d 552, 553 (6th Cir.1976) (per curiam) (affirming application of quasi-judicial immunity to claims against chief probation officer alleging discriminatory probation-reporting requirements). Despite this steady stream, today’s majority charts a new course that separates parole officers’ investigative and process-oriented functions from the list of quasi-judicial activities.
In doing so, the majority offers conflicting instructions. On the one hand, it labels as non-judicial “Leavy’s act of ordering Currie to prepare a Parole Violation Report and Currie’s preparation of the Report for submission to the Board,” despite the fact that these acts constitute the officers’ decisionmaking process and ultimate advice to the parole board. Later, however, the majority acknowledges Horton’s absolute immunity for parole recommendations and targets the officers’ “recommendation that the Board issue a parole warrant” — an act inextricably linked to the board’s ability to enforce parolee’s compliance with the terms of release. In reaching these conclusions, the majority relies entirely on cases from other courts.
Though unpublished, I would adhere to the reasoning adopted in our prior decisions. Employing the functional approach espoused by the majority, this ease presents a discreet parole-enforcement action begun after a records search that took place within two days of Draine’s traffic-ticket-related parole meeting. The challenged conduct concerns an investigation of parole compliance and the preparation of both a parole violation report and a parole warrant. Tennessee law views these steps as falling under parole officers’ core functions of monitoring compliance with parole terms and recommending the appropriate punishment for violations. Compare Tenn.Code Ann. §§ 40-28-
111(a), 40-28-120 (2011) (vesting parole officers with authority “to supervise, investigate and check on the conduct, behavior and progress of parolees” and to prepare violation reports upon reasonable cause, while authorizing the director of parole to issue parole warrants), with Tenn. St. §§ 40-28-605, 40-28-607 (West 2012) (same). As we explained in Balas, such functions are judicial in nature. Balas, 1992 WL 217735, at *5 (“[W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [the probationer] was complying with the terms of his probation, they were performing a quasi-judicial function.”); accord hoggins, 218 Fed.Appx. at 476. See also Cleavinger v. Saxner, 474 U.S. 193, 204, 106 S.Ct. 496, 88 L.Ed.2d 507 (describing parole board members “as an arm of the sentencing judge” (citation and internal quotation marks omitted)).
The fact that parole officers make mistakes to the detriment of a parolee does not justify revoking quasi-judicial immunity. “The prospect of damage liability under section 1983 would seriously erode the officer’s ability to carry out his independent fact-finding function and thereby impair the sentencing [authority’s] ability to carry out [its] judicial duties.” Balas, 1992 WL 217735, at *5 (quoting Demoran v. Witt, 781 F.2d 155, 157 (9th Cir.1986)).
Today’s decision will confuse district courts about the reach of quasi-judicial immunity while exposing sentencing officials to liability for their acts in the service of judicial proceedings. I respectfully dissent.